NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **AZUROUS, INC. d/b/a CABEAU,**<br><br>Plaintiff,<br><br>v.<br><br>**KENNEDY INTERNATIONAL, INC.,**<br><br>Defendant. | Civil Action No. 23-04770 (ZNQ) (JBD)<br><br>**OPINION** |

**QURAISHI, District Judge**

    **THIS MATTER** comes before the Court upon Defendant Kennedy International, Inc.'s ("Defendant") Motion to Dismiss ("Motion", ECF No. 11) Plaintiff Azurous, Inc. d/b/a Cabeau's ("Plaintiff") Complaint ("Compl.", ECF No. 1.) In support of its Motion, Defendant filed a Moving Brief. ("Moving Br.," ECF No. 11-1.) Plaintiff opposed ("Opp'n", ECF No. 18) and Defendant replied ("Reply", ECF No. 19). The Court has carefully considered the parties' submissions and decides the Motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, the Court will **GRANT IN PART AND DENY IN PART** Defendant's Motion. The portion of Count I that alleges willful patent infringement only, Count II, and Count III of the Complaint will be **DISMISSED WITHOUT PREJUDICE.**

## I. BACKGROUND AND PROCEDURAL HISTORY[1]

Plaintiff is a Wyoming corporation organized with a principal place of business in California. (Compl. ¶ 1.) Plaintiff sells "travel comfort products," including travel pillows, of which the EVOLUTION and EVOLUTION CLASSIC Pillows (together, "EVOLUTION Pillow") are two of its most popular products. (*Id.* ¶¶ 7–8.) Plaintiff sells its products through multiple channels: on its website at http://www.cabeau.com; through major online distributors such as Amazon.com; at "nationwide mass-market retailers," including Target, Wal-Mart, and T.J. Maxx; and in retail store Hudson News, duty-free magazines, and SkyMall magazine, making the products available in airports and on flights throughout the United States. (*Id.* ¶¶ 10–11.) Defendant, a competitor that also sells travel pillows, is a New Jersey corporation with its principal place of business in New Jersey. (*Id.* ¶¶ 2, 18.)

One of Plaintiff's patents is the D'402 Patent, issued by the United States Patent and Trademark Office ("USPTO") on July 13, 2010, and entitled "Travel Pillow." (*Id.* ¶¶ 14–15; *see also* D'402 Patent Design, ECF No. 1-2 at Ex. A.) The D'402 Patent claims the "ornamental design for a travel pillow." (*See id.*) The EVOLUTION Pillow features the design of the D'402 Patent. (Compl. ¶ 16.) Cabeau began selling the EVOLUTION Pillow as early as October 4, 2010, and has marked the number of the D'402 Patent on the sleeve of its packaging since that time. (*Id.* ¶ 17.)[2]

---

[1] For the purposes of the Motion to Dismiss, the Court accepts the factual allegations in the Complaint as true and draws all inferences in the light most favorable to the non-moving party. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008); *Merchs. Mut. Ins. Co. v. 215 14th Str., LLC*, Civ. No. 19-9206, 2020 WL 634149, at *1 (D.N.J. Feb. 10, 2020). Further, the Court also considers any "document integral to or explicitly relied upon in the complaint[,]" including the Exhibits filed with the Complaint. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). The parties are familiar with the factual and procedural history of this matter and therefore the Court recites only those facts necessary to resolve the instant Motion.

[2] 35 U.S.C. § 287 prevents patentees from recovering damages for patent infringement if they fail to mark the patent number on the applicable product or its packaging or label. *See* 35 U.S.C. § 287(a).

Plaintiff alleges Defendant has and is "willfully infringing the . . . Patent by making, using, selling, offering to sell and/or importing pillows that embody the invention claimed by the . . . Patent." The allegedly infringing product at issue is Defendant's G-Force 4 Piece Travel Neck Pillow ("G-Force Pillow") (*id.* ¶ 19), although Plaintiff states that the infringement is not limited to that particular product.[3] (*Id.* ¶ 40.) Plaintiff claims that Defendant has "misappropriated" and "infringed the ornamental features of the . . . Patent" such that the G-Force Pillow "appears to be an actual Cabeau product," (*id.* ¶¶ 20–21), thereby "inducing" consumers to purchase the G-Force Pillow thinking it is the patented design. (*Id.* ¶¶ 42, 46.)

Furthermore, Plaintiff alleges that it holds trade dress protection in the "overall appearance and look and feel" of the EVOLUTION Pillow, including "the distinctive shape, outer material, attached media pouch and adjustable clasps (the "Product Dress")." (*Id.* ¶ 22.) The Product Dress includes features Plaintiff alleges are "radically different" from prior travel pillows: a "U-shaped design with prominently raised side cushions; a soft, velvety covering; a zipper located on the bottom seam for removing the covering; a concave arc along the top-rear side; a media pouch attached on the right side; and an adjustable click-based clasp." (*Id.* ¶ 23.) Plaintiff claims that "[t]he Product Dress has become recognized in the industry and marketplace as a symbol uniquely associated with Cabeau and is non-functional because the Product Dress achieves a desired aesthetic effect, yields no particular utilitarian advantage and does not hinder competition because alternative designs are readily available." (*Id.* ¶¶ 24.)

Plaintiff additionally alleges Defendant's G-Force Pillow has "imitated the trade dress" of Plaintiff's EVOLUTION Pillow in the "overall appearance" of the pillow and packaging. (*Id.*

---

[3] Although Plaintiff asserts that the infringement is "without limitation" to the G-Force Pillow (*id.* ¶ 40), Plaintiff does not name any other allegedly infringing product in the Complaint. Therefore, to avoid any confusion (*see* Moving Br. at 7 n.2), the Court construes Plaintiff's claims as applied only to the G-Force Pillow and not to any other product.

3

¶ 32.) Plaintiff claims trade dress protection in the EVOLUTION Pillow's "packaging, which covers only a small part of the Product Dress and allows consumers to view both the Product Dress and packaging concurrently (the "Packaging Dress") (together with the Product Dress, the "Trade Dress"). (*Id.* ¶ 22.) The packaging features "a high-graphic sleeve with eye-catching typography, with the sides of the sleeve wrapped around to cover the rear portion of the pillow." (*Id.* ¶ 27.) The sleeve is "wrapped around the rear, central portion of the pillow" and includes "an image of a person seated on an airplane using the pillow, and . . . an opening for hanging on a display rack, while also allowing side portions of the pillow to extend to either side of the packaging." (*Id.* ¶ 32.)

Plaintiff also alleges that it has spent "millions of dollars marketing, advertising, and promoting the EVOLUTION Pillow through its Product Dress" and Packaging Dress, that "[c]onsumers have repeatedly shown they are willing to pay much more for the qualities inherent in Cabeau's EVOLUTION Pillow" despite the presence of competitors, and that consumers rely upon the "distinctive" Product Dress and Packaging Dress to identify Cabeau's products. (*Id.* ¶¶ 26, 30, 52.)

On August 17, 2023, Plaintiff filed its Complaint alleging three counts against Defendant: (1) Infringement of the D'402 Patent pursuant to 35 U.S.C. §§ 271 and 289; (2) Trade Dress Infringement pursuant to § 43 of the Lanham Act, 15 U.S.C. § 1125(a)(3); and (3) Common Law Unfair Competition. (*See generally* Compl.) Plaintiff seeks, *inter alia*, an unspecified amount of damages including the total profit made by Defendant from its infringement of the D'402 Patent under 35 U.S.C. § 289 and increased damages for willful infringement under 35 U.S.C. § 284; as well as profits earned from alleged infringement of the Trade Dress and unfair competition; a determination that Defendant has infringed the D'402 Patent and Plaintiff's Trade Dress and has

4

competed unfairly with Plaintiff; a permanent injunction to prevent Defendant from engaging in such activity; and a judgment directing Defendant to recall and destroy all allegedly infringing products and materials. (Compl. at 20–22.)

## II. JURISDICTION

The Court has subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331.

## III. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)") provides that a court may dismiss a claim "for failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). On a motion to dismiss for failure to state a claim, the moving party "bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)). District courts conduct a three-part analysis when considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). First, the court "must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (alteration in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the court must accept as true all of the plaintiff's well-pled factual allegations and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (internal quotation marks omitted). In doing so, the court is free to ignore legal conclusions or factually unsupported accusations that merely state, "the-defendant-unlawfully-harmed-me." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Finally, the court must determine whether "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556

U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 678). "The defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages*, 926 F.2d at 1409).

Federal Rule of Civil Procedure 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Twombly*, 550 U.S. at 555 (alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "A plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

## IV. DISCUSSION

### A. THE COMPLAINT STATES A PLAUSIBLE CLAIM FOR PATENT INFRINGEMENT (35 U.S.C. §§ 271 & 289)

The Motion argues that the Complaint does not plead a plausible claim because the purported infringement does not survive the ordinary observer test. (Moving Br. at 14–17.) Plaintiff argues that the "overall visual similarity" of the D'402 Patent to the G-Force Pillow product renders patent infringement plausible at this stage. (Opp'n Br. at 6.) On reply, Defendant maintains that "several non-minor differences between the patented design and the accused product" prevent Plaintiff's patent infringement claim from proceeding. (Reply Br. at 4.)

#### 1. Patent Infringement Standard

To determine whether an accused design infringes a design patent, the court applies the "ordinary observer" test. *Crocs, Inc. v. Int'l Trade Comm'n*, 598 F.3d 1294, 1303 (Fed. Cir. 2010) (citing *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 681 (Fed. Cir. 2008)). This test asks whether "an ordinary observer, familiar with the prior art designs, would be deceived into

believing that the accused product is the same as the patented design."[4] *Id.* "It is the appearance of a design as a whole which is controlling in determining infringement. There can be no infringement based on the similarity of specific features if the overall appearance of the designs are dissimilar." *OddzOn Prods., Inc. v. Just Toys, Inc.*, 122 F.3d 1396, 1405 (Fed. Cir. 1997). This infringement analysis often entails comparing "a side-by-side view of the drawings of the [patented] design and the accused products[,]" because "misplaced reliance on a detailed verbal description of the claimed design risks undue emphasis on particular features of the design rather than examination of the design as a whole."[5] *Crocs*, 598 F.3d at 1302, 1304. "Courts generally need not conduct an elaborate claim construction analysis for design patents because the court should construe design patents as they are shown in the patent drawings." *Egyptian Goddess*, 543 F.3d at 679.

"Where the claimed and accused designs are 'sufficiently distinct' and 'plainly dissimilar,' the patentee fails to meet its burden of proving infringement as a matter of law." *Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*, 796 F.3d 1312, 1335 (Fed. Cir. 2015). As few as "[t]wo major differences" between the claimed and accused designs can create a different overall appearance.

---

[4] The Court in *Crocs* discussed the effect of minor differences between the patented and accused products on the ordinary observer:
> When the differences between the claimed and accused designs are viewed in light of the prior art, the attention of the hypothetical ordinary observer may be drawn to those aspects of the claimed design that differ from the prior art. If the claimed design is close to the prior art designs, small differences between the accused design and the claimed design assume more importance to the eye of the hypothetical ordinary observer. The ordinary observer, however, will likely attach importance to those differences depending on the overall effect of those differences on the design. Even if the claimed design simply combines old features in the prior art, it may still create an overall appearance deceptively similar to the accused design. In that case, this court will uphold a finding of infringement.

*Crocs*, 598 F.3d at 1303 (internal citations omitted).

[5] In design patent infringement cases, photographs of the accused designs may be considered in resolving a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) where such photographs are, as here, central to a plaintiff's allegations. *See Anderson v. Kimberly-Clark Corp.*, Civ. No. 12–1979, 2013 WL 9760040 at *2 (W.D. Wa. Sept. 25, 2013).

*See, e.g.*, *Wing Shing Prods. (BVI) Co. Ltd. v. Sunbeam Prods., Inc.*, 665 F. Supp. 2d 357, 362–63 (S.D.N.Y. 2009), *aff'd*, 374 F. App'x 956 (Fed. Cir. 2010). However, the differences must be "evaluated in the context of the claimed design as a whole, and not in the context of separate elements in isolation." *Ethicon*, 796 F.3d at 1335–37.

2. <u>The Complaint Plausibly Alleges Patent Infringement</u>

A side-by-side comparison of the D'402 Patent (on the left) against the G-Force Pillow (on the right) is instructive:



(Compl. ¶ 21 (citing D'402 Patent Design at Ex. A).)

Plaintiff alleges the following similarities between the shape of its D'402 Patent and the G-Force Pillow: "(i) an overall U-shaped design; (ii) an outer generally vertical wall; (iii) an upwardly and inwardly sloping area; [sic] (iii) an inner, raised smaller U-shaped area (iv) having an inwardly sloped upper surface; and, [sic] (iv) and drawstring with an adjustment mechanism connecting the two opposing front portions of the pillow." (Opp'n Br. at 6.) The below diagram highlights these features, with the D'402 Patent on the left and the G-Force Pillow on the right:



(*Id*. at 7.)

Defendant points to several differences it argues defeat Plaintiff's patent infringement claim. These include: (1) "the presence of a continuous closed-loop lanyard with a circular clasp" in the D'402 Patent design as opposed to "two distinct strings . . . . with plastic end caps . . . joined by a different cylindrical clasp" in the G-Force Pillow; (2) "a narrow and vertically oriented bump out pocket with an open top . . . for holding electronics . . . in the patented design" as opposed to a zippered, horizontally-oriented pocket in the G-Force Pillow; and (3) overall, a more form fitting cover in the patented design that depicts sharper angles, slopes, and proportions compared to the looser fitting cover in the G-Force Pillow that depicts a more rounded, conventional appearance with gentler (and indeed different) angles, slopes, and proportions." (Moving Br. at 4–6; *see also* Reply Br. at 4.)[6] Images depicting several of these elements are below, with the D'402 Patent on the left and the G-Force Pillow on the right:



(Moving Br. at 5–6.)

---

[6] Defendant also mentions as differences between the patented design and the G-Force Pillow "the presence of nineteen perpendicular lines of tufting or stitching . . . along the top surface of the patented design that is absent from the G-Force Pillow's differently textured patterned top" and "the presence of that same textured pattern . . . across the entire surface area of the G-Force Pillow, and some additional seams . . . while the patented design is otherwise smooth on all sides except for its top tufted/stitched surface". (Moving Br. at 3–4.) Plaintiff claims "these lines are not 'tufting' or 'stitching,' but rather represent creases in the fabric as the pillow is not rigid." (Opp'n Br. at 9.) Defendant responds that Plaintiff cannot claim that the lines represent the properties of the fabric because Plaintiff fails to follow USPTO guidance on "how to properly claim such fabric properties." (Reply Br. at 5.) The Court declines to address this issue as it does not perceive that these elements override the overall visual similarity of the patented design and the G-Force pillow.

9

However, these are not "major" differences that affect the overall visual appearance and therefore cannot overcome the visual similarity between the D'402 Patent and the G-Force Pillow. *Wing Shing Prods.*, 665 F. Supp. 2d at 362–63. The Court finds that no ordinary observer looking at images of the D'402 Patent and the G-Force Pillow side-by-side would determine that a difference in the clasp design, shape of the pockets, and exact angles of the pillow, substantially affects the visual similarity of the designs. In any case, the exact proportions and angles of the G-Force Pillow as compared to the patented design are difficult to determine when the submitted D'402 Patent does not specify the patented design's dimensions. (*See generally* D'402 Patent Design at Ex. A.) Here, "[i]f the claimed design and the accused design were arrayed in matching colors and mixed up randomly, this court is not confident that an ordinary observer could properly restore them to their original order without very careful and prolonged effort." *See Crocs*, 598 F.3d at 1306 (determining that a pair of shoes, which appeared nearly identical to the patent for a pair of Crocs shoes other than the substitution of square holes for round ones, were sufficiently similar to the patented design to sustain a claim for patent infringement).

One of the overall effects of the D'402 Patent design is its shape such that a larger U-shaped base transitions to a raised, smaller U-shaped upper portion. Another effect is the inwardly-sloping upper surface that gives the pillow an almost wave-like, flowing quality. These features are both present in the G-Force Pillow and create a similar visual effect. The media pocket and clasp are not focal points of either the claimed design or the allegedly infringing product, and thus do not change the overall effect of the designs.

In short, the Court finds that the G-Force Pillow embodies the overall effect of the '402 Patent design such that the Complaint plausibly alleges that an ordinary observer would be deceived into believing that the accused product is the same as the patented design. Thus, Plaintiff

plausibly pleads a plausible claim for patent infringement. Accordingly, the Court will **DENY** the portion of the Motion that seeks to dismiss the claim for design patent infringement (Count I).

### B. THE COMPLAINT FAILS TO PLAUSIBLY ALLEGE WILLFUL INFRINGEMENT (35 U.S.C. § 284)

Pursuant to § 284, once infringement has been established, the court "may increase the damages up to three times the amount found or assessed." 35 U.S.C. § 284. Enhanced damages are "designed as a 'punitive' or 'vindictive' sanction for egregious infringement behavior[.]" *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93, 103 (2016).

Plaintiff alleges and argues that it has consistently marked the number of the D'402 Patent on the packaging of the EVOLUTION Pillow as early as October 4, 2010, and that Defendant has therefore had notice of the D'402 Patent since that time and is liable for willful infringement. (*See* Compl. ¶ 45; Opp'n Br. at 15–16.) Defendant argues that this marking is not sufficient, on its own, to allege that Defendant had actual notice of the D'402 patent or its infringement. (*See* Moving Br. at 7.)

A plaintiff seeking to enhance its damages based on willful infringement "must plausibly allege that the accused infringer deliberately or intentionally infringed a patent-in-suit after obtaining knowledge of that patent and its infringement." *APS Tech., Inc. v. Vertex Downhole, Inc.*, Civ. No. 19-1166, 2020 WL 4346700 at *4 (D. Del. July 29, 2020); *see also Eko Brands, LLC v. Adrian Rivera Maynez Enters., Inc.*, 946 F.3d 1367, 1378–79 (Fed. Cir. 2020). Although district courts have discretion to award enhanced damages for willful patent infringement, based on *Halo*, courts "limit[ ] the award of enhanced damages to egregious cases of misconduct beyond typical infringement." *Halo*, 579 U.S. at 110. Post-*Halo*, the infringer's actions must be "willful, wanton, malicious, [or in] bad faith" to support a plausible claim of willful patent infringement. *Id.* at 103. The Supreme Court has concluded that there is no rigid test for when enhanced damages

are appropriate, but rather that "courts should continue to take into account the particular circumstances of each case in deciding whether to award damages, and in what amount" in an "exercise [of] their discretion." *Id.* at 106; *see also Infinity Comput. Prods. v. Oki Data Americas*, Civ. No. 12-6797, 2013 WL 12212326, at *2 (E.D. Pa. Mar. 20, 2013) ("[I]n determining whether a Plaintiff has made out a claim of willful infringement, the trial court must examine the totality of the circumstances" as "[w]illfulness is a fact-intensive issue[.]")

Plaintiff cites a number of cases for the proposition that merely marking a patent number on a claimed product is sufficient to raise an inference that Defendant had knowledge of the patent and its infringement prior to the instant lawsuit and is therefore liable for willful infringement/enhanced damages. (*See* Opp'n Br. at 16 (collecting cases).) However, none of these cases specifically held that such marking, on its own, supports a claim of willfulness, and all of them were decided prior to *Halo*. *See 3D Sys. v. Formlabs, Inc.*, Civ. No. 13-7973, 2014 WL 1904365 at *6-7 (S.D.N.Y. May 12, 2014) (discussing patent marking for the purpose of establishing knowledge for induced infringement under 35 U.S.C. § 271(b), not willful infringement under *Halo*); *Weiland Sliding Doors and Windows, Inc. v. Panda Windows and Doors, LLC*, Civ. No. 10-677, 2012 WL 202664 at *4 (S.D. Cal. Jan. 23, 2012) (same); *Lutron Elecs. Co., Ltd. v. Creston Elecs., Inc.*, 970 F. Supp. 2d 1229, 1237–38 (D. Utah 2013) (same).

Other than the statement that Plaintiff has marked the D'402 Patent number on the EVOLUTION Pillow packaging since 2010 (*see* Compl. ¶ 45), there are no other alleged facts to suggest that Defendant's alleged actions were "willful, wanton, malicious, [or in] bad faith." *Halo*, 579 U.S. at 103. *See also Kyowa Hakka Bio, Co. v. Ajinomoto Co.*, Civ. No. 17-313, 2018 WL 834583 at *13 (D. Del. Feb. 12, 2018) ("Mere formulaic pleading of willful infringement will not survive a Rule 12(b)(6) motion."). Nor are there facts alleged to suggest that Defendant had actual

notice of the D'402 Patent or its alleged infringement of the same—such as a pre-lawsuit notice letter. *Weiland*, 2012 WL 202664, at *4 (finding knowledge or willful blindness of patents where plaintiff marked its products and sent letters regarding the patents to the defendants, and parties were competitors in the same market). Nothing in the Complaint suggests that Defendant's alleged conduct was egregious beyond typical infringement. *Halo*, 579 U.S. at 110.

Nor has Plaintiff plausibly alleged that the mere filing of the Complaint (and Defendant's knowledge of the D'402 Patent as specified therein) is enough to support a claim of willful infringement as to Defendant's alleged post-Complaint conduct. (Opp'n Br. at 16–17; *see also* Moving Br. at 5 n.19; Reply Br. at 10 n.7.) There is no binding authority on this issue. However, courts in this Circuit have generally only allowed willfulness claims to succeed as to post-Complaint infringing activity when these claims were accompanied by allegations other than mere marking of the patent number. *Compare NexStep, Inc. v. Comcast Cable Commc'ns, L.L.C.*, Civ. No. 19-1031, 2019 WL 5626647 (D. Del. Oct. 31, 2019) ("The complaint notifies Comcast of the patents that it is accused of infringing and includes factual allegations of Comcast's continued infringing activities. . . . Therefore, the complaint states a claim for post-suit willful infringement.") *and DermaFocus L.L.C. v. Ulthera*, Inc., 201 F. Supp. 3d 465, 473 (D. Del. 2016) (noting that prior to *Halo*, "mere notice of the charge of infringement gleaned from service of the complaint [did not] pass muster for a willfulness claim" but that post-*Halo*, "the court will allow plaintiff's general allegations of willful infringement to withstand the motion to dismiss.") *with ZapFraud, Inc. v. Barracuda Networks, Inc.*, 528 F. Supp. 3d 247, 250 (D. Del. 2021) ("[I]n the absence of binding authority to the contrary from the Federal Circuit and Supreme Court, . . . I conclude that the operative complaint in a lawsuit fails to state a claim for willfulness-based enhanced damages under [35 U.S.C.] § 284 where the defendant's alleged knowledge of the

13

asserted patents is based solely on the content of that complaint or a prior version of the complaint filed in the same lawsuit.").

In sum, based on the pleading, the Court finds Plaintiff's claim for willful patent infringement, before or after the Complaint, cannot succeed. Accordingly, the Court will **GRANT** the portion of the motion seeking to dismiss the claim for willful patent infringement.

### C. THE COMPLAINT FAILS TO PLAUSIBLY ALLEGE TRADE DRESS INFRINGEMENT (15 U.S.C. § 1125(A)(3))

Trade dress "is the overall look of a product of business" and includes "not only a product's packaging but also its design, such as its size, shape, . . . color," and texture. *Ezaki Glico Kabushiki Kaisha v. Lotte Int'l Am. Corp.*, 986 F.3d 250, 255–56 (3d Cir. 2021) (quoting *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 308 (3d Cir. 2014) and *Wal-Mart Stores, Inc. v. Samara Bros.*, 529 U.S. 205, 209 (2000)). The Third Circuit has noted that "before [the Court] reaches the question of protectability . . . a district court should scrutinize a plaintiff's description of its trade dress to ensure itself that the plaintiff seeks protection of visual elements of its business." *Fair Wind*, 764 F3d at 309. This includes a "duty to articulat[e] the specific elements which comprise its distinct dress." *Id.* To meet this duty "[t]he discrete elements which make up the [trade dress claim] should be separated out and identified in a list." *Id.* (quoting 1 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 8:3 (4th ed. 2014)). "[M]erely includ[ing] images" of products is insufficient[.]'" *Tristar Prods., Inc. v. E. Mishan & Sons, Inc.*, Civ. No. 17-1204, 2017 WL 1404315, at *7 (D.N.J. Apr. 19, 2017) (citing *Fair Wind*, 764 F.3d at 309); *see also Liko AB v. Rise Lifts, Inc.*, Civ. No. 07-5302, 2008 WL 2977869, at *6 (E.D. Pa. July 31, 2008) ("The mere attachment of photographs is not sufficient to provide notice of what elements are alleged to constitute the trade dress at issue.").

To state a claim for a trade dress infringement, a plaintiff must plausibly plead that (1) the allegedly infringing design is nonfunctional; (2) the design is inherently distinctive or has acquired secondary meaning; and (3) consumers are likely to confuse the source of the plaintiff's product with that of the defendant's product. *See Fair Wind*, 764 F.3d at 309. In addition to these elements, a plaintiff must "articulat[e] the specific elements which comprise its distinct dress." *Id.* at 310.[7]

### 1. Non-Functional

Defendant argues that Plaintiff's trade dress claim cannot succeed because the Complaint fails to plead that its Trade Dress in the EVOLUTION Pillow is non-functional. (*See* Moving Br. at 19–23; Reply Br. at 10–12.) Plaintiff insists that "the overall appearance [sic] Cabeau's EVOLUTION Pillow itself, as well as the EVOLUTION Pillow when sold with the associated packaging, comprises a combination of features, the totality of which create a unique and source-identifying trade dress." (Opp'n Br. at 20.)

In order to prevent trade dress protection from "usurping the place of patents" and "keep trademark law in its lane," a trade dress cannot protect the functionality of a product. *Ezaki*, 986 F.3d at 256; *accord* Lanham Act, 15 U.S.C. § 1052(e)(5) (providing that registration shall be refused if it "comprises any matter that, as a whole, is functional"). "Trade dress is limited to designs that identify a product's source. It does not safeguard designs that are functional—that is, useful." *Ezaki*, 986 F.3d at 253. "[A] product's design, including its shape, is often useful and thus functional." *Id.* at 258; *see also PIM Brands Inc. v. Haribo of America Inc.*, 81 F.4th 317, 321 (3d Cir. 2023) (holding that "trade dress" is only meant to "protect[] distinctive choices" that are "arbitrary, ornamental, or the like"). A feature is functional if it is "essential to the use or

---

[7] Plaintiff argues (*see* Opp'n Br. at 18) that it is inappropriate for a district court to address a trade dress claim on a Motion to Dismiss. This is incorrect as a matter of law. *See, e.g.*, *Fair Wind*, 764 F.3d at 305–06 (affirming district court's dismissal of a plaintiff's trade dress infringement claim).

purpose of the [product]" or "it affects the cost or quality of the [product]." *TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 33, 58 (2001) (citations omitted).

"Trade dress is limited to design choices that serve only to brand a product." *PIM Brands*, 81 F.4th at 321. "If a design choice 'would put competitors at a significant non-reputation-related disadvantage,'" or "makes a product work better" or "improves cost, quality, or the like" then it is functional and thus not protected as trade dress. *Id.* (internal citations omitted). "Because the functionality bar is low," in order to be functional "all the design need do is give the product a significant competitive edge beyond identifying its source." *Id.* at 322.

2. The Complaint Fails to Plead Non-Functionality

Plaintiff alleges that the Trade Dress is non-functional because it "achieves a desired aesthetic effect," "yields no particular utilitarian advantage," and "does not hinder competition because alternative designs are readily available" and competitor products "come in a variety of shapes and sizes." (Compl. ¶ 24.) Plaintiff also alleges that the Trade Dress "does not serve any function other than to identify Cabeau as the source of its product." (*Id.* ¶ 62.)

A side-by-side comparison of one EVOLUTION Pillow product (left) and the G-Force Pillow (right) is below:



(*Id.* ¶ 32.) The claimed features that make up the Product Dress are: "the distinctive shape, outer material, attached media pouch and adjustable clasps[.]" (*Id.* ¶ 22.) These features include a "U-shaped design with prominently raised side cushions; a soft, velvety covering; a zipper located on

the bottom seam for removing the covering; a concave arc along the top-rear side; a media pouch attached on the right side; and an adjustable click-based clasp." (*Id.* ¶ 23.)

Despite Plaintiff's claim of non-functionality, the Complaint and supporting documents indicate that the very features Plaintiff contends are non-functional are not only useful, but also give the EVOLUTION Pillow an advantage over its competitors—they do more than just brand the product. (Moving Br. at 10, 22.) The Complaint alone suggests that the EVOLUTION Pillow's "U-shaped design" and configuration and its "soft, velvety" texture serve the function of consumer comfort. (Compl. ¶ 23; *see* Moving Br. at 22.) Additionally, compounding the inference of functionality, Plaintiff's website page for the "EVOLUTION Classic Neck Pillow," incorporated by reference into the Complaint,[8] states that the pillow design "improves the ability to stay asleep" and touts the pillow's advantages:

> The *thin flattened pillow back aligns your spine, relaxing your back muscles* and releasing all that pent-up tension.
> An *adjustable front clasp* and pivot toggle for *the perfect fit*. . . .
> *Raised sides support your head and chin* in every direction *for all-around comfort.*
> *Soft velour cover* that's *machine-washable*. . . .
> Our classic *memory foam* pillow *puts an end to stiff necks*[.]

*Evolution Classic Neck Pillow*, Cabeau, https://cabeau.com/products/evolution-classic-cabeau-pillow (last visited June 26, 2024) (emphasis added).

---

[8] Plaintiff contends that it is impermissible for Defendant (and the Court) to rely on materials on Plaintiff's website because they are outside the pleadings. (Opp'n Br. at 22.) However, "a court may also consider matters of public record and documents integral to or explicitly relied upon in the complaint without converting the motion to dismiss into a motion for summary judgement." *Spizzirri v. Zyla Life Scis.*, 802 F. App'x 738, 739 (3d Cir. 2020); *see also In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (same). In addition, courts are permitted to consider a party's website that was integral to or explicitly relied upon in a complaint, including where the complaint included the URL. *See, e.g.*, *Bambi Baby.com Corp. v. Madonna Ventures, Inc.*, Civ. No. 18-12669, 2019 WL 2337447, at *4 (D.N.J. June 3, 2019) (permitting consideration of a plaintiff's website, included in the complaint as a URL, that was integral to the complaint on a motion to dismiss an unfair competition claim). Here, Plaintiff explicitly relied upon its website in the Complaint to showcase its advertising of its products, and included the website URL. (Compl. ¶ 10.) Therefore, the Court may consider the website in the context of the current Motion to Dismiss. To be clear, the Court is not taking judicial notice of facts stated on Plaintiff's website because those facts are Plaintiff's "unauthenticated marketing material[.]" *Bambi Baby*, 2019 WL 2337447, at *4 n.5 (citation omitted).

Nearly every one of the features Plaintiff attempts to characterize as non-functional—including the pillow's shape, clasp, and soft cover—are described as serving a particular function on Plaintiff's website. Moreover, even those features not listed on the website appear from the allegations in the Complaint to be inherently functional, including the "media pouch" for storing media items and a zipper that has the function of "removing the covering[.]" (Compl. ¶¶ 21, 23.) All of the claimed features, taken together, are not "arbitrary" or "ornamental," *PIM Brands*, 81 F.4th at 321, but instead appear to be design choices that serve to bolster the quality of the design and maintain the product's popularity with consumers over other brands. (Compl. ¶¶ 8, 13, 26.)[9] In fact, Plaintiff states that no prior travel pillow "came close to [the] level of sophistication and quality" of the EVOLUTION Pillow" and consumers "are willing to pay much more" for the EVOLUTION Pillow's "premium quality and superior design[.]" (*Id.* ¶¶ 8, 13, 26.)

Plaintiff asks the Court to find that its trade dress as a whole is functional. (Opp'n Br. at 22–23 (quoting *LeSportsac, Inc. v. K Mart Corp.*, 754 F.2d 71, 76 (2d Cir. 1985) ("by breaking [plaintiff's] trade dress into its individual elements and then attacking certain of those elements as functional, [defendant] misconceives the scope of the appropriate inquiry.").) However, as Defendant notes, even taking the Trade Dress as a whole, Plaintiff has failed to plead facts suggesting that the Trade Dress is non-functional because the majority of its individual elements appear functional. (Reply Br. at 11.) Because Plaintiff has failed to adequately plead non-functionality, its trade dress claim cannot succeed.[10] Accordingly, Defendant's Motion to Dismiss will be **GRANTED** as to Count II (Trade Dress Infringement).

---

[9] The Court notes that as to the Packaging Dress, Plaintiff's sleeve packaging with "an opening to permit hanging on a display rack" also appears to be inherently functional because it assists with hanging the pillow. (Compl. ¶ 32; *see also* Moving Br. at 23.). Moreover, the packaging sleeve graphic, "an image of a person seated on an airplane using the pillow" (Compl. ¶ 32), notifies the consumer of the pillow's intended use and therefore appears functional.

[10] Because the Court is rejecting Plaintiff's trade dress claim on other grounds, the Court declines to take judicial notice of Defendant's submission that the USPTO rejected Plaintiff's attempt to obtain federal registration in the product trade dress it asserts in its Complaint, due to it being functional. (Moving Br. at 23 n.7; *id.* at Ex. A.)

### D. THE COMPLAINT FAILS TO PLAUSIBLY ALLEGE COMMON LAW UNFAIR COMPETITION

Given the overlap in the analysis for trade dress infringement and for common law unfair competition, the Court finds that Plaintiff's common law claims for unfair competition also cannot proceed for the same reasons articulated above. *See Ezaki*, 986 F.3d at 255 (holding that the plaintiff's "Lanham Act claims depend on the validity of its trade dress. New Jersey's unfair-competition and trademark laws are not significantly different from federal law, so our analysis of [the plaintiff's] Lanham Act claims applies equally to dispose of its state-law claims"). Accordingly, Defendant's Motion to Dismiss will also be **GRANTED** as to Count III (Common Law Unfair Competition).

## V. CONCLUSION

For the reasons stated above, the Court will **GRANT IN PART AND DENY IN PART** Defendant's Motion (ECF No. 11). The portion of Count I that alleges willful patent infringement only, Count II, and Count III of the Complaint will be **DISMISSED WITHOUT PREJUDICE**. Plaintiff will be given leave to file an Amended Complaint to address the deficiencies set forth in this Opinion within thirty (30) days. An appropriate Order will follow.

Date: **June 28, 2024**

                                                             s/ Zahid N. Quraishi
                                                             **ZAHID N. QURAISHI**
                                                             **UNITED STATES DISTRICT JUDGE**