<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **AZUROUS, INC.** *d/b/a CABEAU*,<br><br>Plaintiff,<br><br>v.<br><br>**KENNEDY INTERNATIONAL, INC.**,<br><br>Defendant. | Civil Action No. 23-4770 (ZNQ) (JBD)<br><br>**OPINION** |

<u>**QURAISHI, District Judge**</u>

**THIS MATTER** comes before the Court upon a Motion to Dismiss the Amended Complaint ("Am. Compl.," ECF No. 22) filed by Defendant Kennedy International, Inc. ("Defendant"). ("Motion," ECF No. 29.) Defendant filed a Moving Brief in support of the Motion. ("Moving Br.," ECF No. 29-1.) Plaintiff Azurous, Inc. d/b/a Cabeau ("Plaintiff") filed an Opposition Brief. ("Opp'n Br.," ECF No. 31.) Defendant filed a Reply Brief ("Reply Br.," ECF No. 32), and two exhibits (ECF Nos. 32-2 and 32-3), and Plaintiff filed a Sur-Reply. ("Sur-Reply," ECF No. 33.)[1] The Court has carefully considered the parties' submissions and decides the Motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1.[2] For the reasons set forth below, the Court will **GRANT-IN-PART** and **DENY-IN-PART** the Motion.

---

[1] The Court granted Plaintiff leave to file a sur-reply on December 2, 2024. (ECF No. 34.)
[2] Hereinafter, all references to "Rule" or "Rules" refer to the Federal Rules of Civil Procedure unless otherwise noted.

1

I.      **BACKGROUND AND PROCEDURAL HISTORY**

The facts are known to the parties and will not be reiterated here. The Court incorporates by reference its June 28, 2024 Opinion for a recitation of the relevant factual background. (ECF No. 20.)[3]

As a procedural matter, Plaintiff filed its initial Complaint on August 17, 2023, alleging three counts against Defendant: (1) infringement of the D'402 Patent pursuant to 35 U.S.C. §§ 271 and 289; (2) trade dress infringement pursuant to Section 43 of the Lanham Act, 15 U.S.C. § 1125(a)(3); and (3) common law unfair competition. (*See generally* ECF No. 1.) Defendant moved to dismiss the Complaint (ECF No. 11), which the Court granted-in-part and denied-in-part (ECF Nos. 20, 21). The Court dismissed without prejudice the portion of Count One that alleged willful patent infringement, Count Two, and Count Three. (ECF No. 21.) As to Count One, the Court reasoned that there were no facts alleged to suggest that Defendant's purported actions were willful, wanton, malicious, or in bad faith, that there were no facts alleged to suggest that Defendant had actual notice of the patent or its alleged infringement of the same, and that the filing of a complaint alone does not suggest willful infringement. (*Id.* at 12–13.) As to Plaintiff's claim for trade dress infringement, Count Two, the Court held that the Complaint failed to plead non-functionality because a majority of its individual elements appeared functional. (*Id.* at 18.) The Court dismissed Count Three, the claim for common law unfair competition, for the same reasons it dismissed Count Two. (*Id.* at 19.)

In response, Plaintiff filed an Amended Complaint and various exhibits. (ECF Nos. 22 to 22-6.) In filing the Amended Complaint, the Court notes that Plaintiff failed to comply with Local Civil Rule 15.1(b)(2), which mandates that a plaintiff file "a form of the amended pleading that

---

[3] *See Azurous, Inc. v. Kennedy Int'l, Inc.*, Civ. No. 23-4770, 2024 WL 3219663, at *1 (D.N.J. June 28, 2024).

shall indicate in what respect(s) it differs from the pleading that it amends, by bracketing or striking through materials to be deleted and underlining materials to be added." Local Civ. Rule 15.1(b); *see also Sammut v. Valenzano Winery LLC*, Civ. No. 18-16650, 2019 WL 2498767, *5, n.2 (D.N.J. June 17, 2019) (citation omitted) (indicating that dismissal may be appropriate where a plaintiff "did not properly indicate how the Amended Complaint differs from her original one" as required by Local Civil Rule 15.1). Despite this procedural deficiency, the Court accepts the Amended Complaint and considers the merits of Defendant's Motion herein.

## II.    SUBJECT MATTER JURISDICTION

The Court has subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331.

## III.    LEGAL STANDARD

Rule 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (abrogated on other grounds)).

A district court conducts a three-part analysis when considering a motion to dismiss pursuant to Rule 12(b)(6). *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (alteration in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the court must accept as true all of the plaintiff's well-pled factual allegations and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). The court, however, may ignore legal conclusions or factually unsupported accusations that merely state the defendant unlawfully harmed the plaintiff. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550

U.S. at 555). Finally, the court must determine whether "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 663).

On a Rule 12(b)(6) motion, the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)). Lastly, generally, "a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). But where a document is "integral to or explicitly relied upon in the complaint," it "may be considered without converting the motion to dismiss into one for summary judgment" under Rule 56. *Doe v. Princeton Univ.*, 30 F.4th 335, 342 (3d Cir. 2022).

## IV.    DISCUSSION

In the Motion, Defendant first renews a prior argument that Plaintiff cannot plausibly plead design patent infringement because any alleged similarity between Plaintiff's design patent and Defendant's design is based on "functional, *non*-ornamental features that cannot be covered by a design patent." (Moving Br. at 27 (emphasis in original).) Plaintiff argues that Defendant has waived this argument because it was available at the time of the original motion. (Opp'n Br. at 5–7.)

In its last Opinion, the Court rejected Defendant's argument that the Court should dismiss Plaintiff's design patent infringement claim. (*See* ECF No. 20 at 10 ("[T]he Court finds that the G-Force Pillow embodies the overall effect of the [D']402 Patent design such that the Complaint

plausibly alleges that an ordinary observer would be deceived into believing that the accused product is the same as the patented design. Thus, Plaintiff [] pleads a plausible claim for patent infringement.").) This determination is law of the case. *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 815–16 (1988) (noting that "the doctrine of law of the case posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case"); *Est. of DeRosa v. Murphy*, Civ. No. 22-02301, 2025 WL 249169, at *4 (D.N.J. Jan. 21, 2025) (explaining that a prior judge's ruling on an issue earlier in the case precluded the losing party from reasserting the claim at a subsequent stage in the case).

The Court also agrees with Plaintiff that Defendant's functionality argument was available at the time of the original motion and that it is therefore waived. *See Bell v. Lockheed Martin Corp.*, Civ. No. 08-6292, 2011 WL 1467365, at *7 (D.N.J. Apr. 18, 2011) ("[T]he filing of an amended complaint will not revive the right to present by motion defenses that were available but were not asserted in timely fashion prior to the amendment of the pleading." (quoting 5C Charles Alan Wright, et al., *Federal Practice & Procedure* § 1388, at 491 (4th ed. 2009)).)

Accordingly, the portion of the Motion seeking to dismiss Plaintiff's claim for design patent infringement on this basis will be **DENIED**.

### A.  WILLFUL INFRINGEMENT (COUNT ONE)

Turning to Plaintiff's claim for willful infringement, a subset of Plaintiff's design patent infringement claim, Defendant argues that Plaintiff once again fails to state a claim for willful infringement because it has not pled facts to support an inference that Defendant had actual knowledge of Plaintiff's D'402 Patent. (Moving Br. at 14, 16.) Plaintiff argues in opposition that the Court's prior decision did not state that actual knowledge of a patent is required to plead

willfulness. (Opp'n Br. at 10.)[4] Plaintiff points to the Amended Complaint, which alleges that it has consistently marked the number of the patent on its packaging and that "Defendant's infringement is therefore willful." (Am. Compl. ¶¶ 17, 45, 63) On this point, Defendant argues that simply marking a patent number on a claimed product is insufficient to show willfulness. (Moving Br. at 15.) In rebuttal, Plaintiff argues that its allegations in the totality sufficiently plead pre-suit and post-suit notice of the asserted patents. (Opp'n Br. at 12, 15.) Thus, Plaintiff contends that considering the totality of the circumstances in this case, it has adequately pled a claim for willful infringement. (*Id.* at 20–11.)

The parties appear to disagree, as a fundamental legal matter, whether a plausible allegation of a defendant's *actual* knowledge is required to plead willful infringement or whether recklessness/knew or should have known[5] is sufficient. At least at the pleading stage, the Court sees little practical distinction between the two standards given that the same allegations that would support a plausible inference of actual knowledge would very likely equally support a plausible inference of recklessness.[6] The Court does not resolve the parties' disparate legal positions because it finds that under either standard, the Amended Complaint fails to plead a plausible claim

---

[4] Defendant understandably latches onto the portion of the Court's previous Opinion observing that the initial Complaint lacked "facts . . . to suggest that Defendant had actual notice of the D'402 Patent or its alleged infringement of the same—such as a pre-lawsuit notice letter." (ECF No. 20 at 12–13.) In this District, a pre-suit notice letter has been found to be a consideration as to the adequacy of pleading pre-suit willful infringement, but its absence has not been fatal. *See Novaplast Corp. v. Inplant, LLC*, Civ. No. 20-7396, 2021 WL 5770264, at *10 (D.N.J. Dec. 6, 2021) (willful infringement found to be adequately pled based in part on the defendant's receipt of a notice letter); *OANDA Corp. v. GAIN Capital Holdings*, Civ. No. 20-5784, 2021 WL 1186778, at *13 (D.N.J. March 30, 2021) (same); *see also NASDAQ, Inc. v. IEX Grp., Inc.*, Civ. No. 18-3014, 2019 WL 102408, at *14 (D.N.J. Jan. 4, 2019) (willful infringement found to be adequately pled—despite absence of a notice letter—based on plausible allegations that defendant's employees had other reasons to know of the patents prior to suit).
[5] *See, e.g.*, *St. Clair Intellectual Prop. Consultants, Inc. v. Hewlett–Packard Co.,* Civ. No. 10-425, 2012 WL 1134318, at *2 (D. Del. Mar. 28, 2012) (noting that an adequate pleading of willful infringement can include factual allegations that show the infringer was "objectively reckless" as to the risk of infringement).
[6] The Supreme Court's decision in *Halo Electronics, Inc. v. Pulse Electronics, Inc.*, 579 U.S. 93 (2016), is not definitive on this point, but it arguably signals that something less than actual notice may be adequate because its discussion of the timing of when a party's culpability is measured includes the observation that "[n]othing in *Safeco* suggests that we should look to facts that the defendant neither knew *nor had reason to know* at the time he acted." *Id.* at 106 (emphasis added).

for *pre-suit* willful infringement, but does plead a plausible claim for *post-suit* willful infringement.

As to pre-suit willfulness, Plaintiff alleges as follows:

> 64. Kennedy knew or should have known of the D'402 Patent as Cabeau and Kennedy compete in the same market for travel pillows, sell their respective travel pillows in the same channels of trade, Cabeau prominently marks its products, including its EVOLUTION® Pillow, with notice of the D'402 Patent, Cabeau has invested significant efforts into advertising and promoting its EVOLUTION® Pillow, the EVOLUTION® Pillow has received significant media attention, and Kennedy's G-Force 4 Piece Travel Neck Pillow copies the patented design claimed in the D'402 Patent.

(Am. Comp. ¶ 64.) The Court finds that the new allegations point to an inference that Defendant knew/should have known of Plaintiff's *product* rather than Plaintiff's *design patent*, i.e., competing in the same market, selling via same trade channels, advertising spend, media attention, and copying.[7] That leaves Plaintiff's patent marking, which the Court has already found inadequate on its own, as the only reasonable basis for pre-suit willful infringement. The Court therefore finds that the Amended Complaint fails to plead a plausible claim for pre-suit willful infringement.

As to post-suit willfulness, Plaintiff alleges that "Kennedy received express notice of the D'402 Patent and its infringement by way of Cabeau['s] August 17, 2023 cease and desist letter . . . which included a copy of the original Complaint." (*Id.* ¶ 25.) Plaintiff alleges that despite receiving the cease-and-desist letter and the Complaint, Kennedy continues to sell its G-Force 4 Piece Travel Neck Pillows. (*Id.* ¶¶ 26, 27.) Moreover, Plaintiff alleges that

> Kennedy continued to make, use, sell, offer for sale in, and/or import into the United States infringing travel pillows, including its G-Force 4 piece travel pillow, after having notice of the D'402 Patent,

---

[7] A defendant's intentional copying may still prove relevant to the egregiousness of its conduct for the purposes of assessing enhanced damages. *Halo*, 579 U.S. at *103–104; *see also Polara Eng'g Inc. v. Campbell Co.*, 894 F.3d 1339 1355 (Fed. Cir. 2108) (affirming finding of willfulness based partly on evidence of intentional copying)

7

> including after Kennedy's receipt of Cabeau's August 17, 2023 cease and desist letter and the original Complaint in this action. Kennedy did not recall its infringing travel pillows, including its G-Force 4 Piece Travel Neck Pillows, after receipt of Cabeau's August 17, 2023 cease and desist letter and the original Complaint. Kennedy's continued actions to, *inter alia*, make, use, sell, offer for sale in, and/or import into the United States infringing travel pillows, result in infringement or disregarding an objectively high likelihood that such actions will result in infringement. Kennedy's infringement is therefore willful.

(*Id.* ¶ 66.)

The Court is satisfied that Plaintiff has plausibly alleged a claim for post-suit willful infringement as of the time of the filing of the initial Complaint. The Amended Complaint asserts that Plaintiff sent Defendant a cease-and-desist letter along with the Complaint, directly putting Defendant on notice of its patent. *Ravgen, Inc. v. Ariosa Diagnostics, Inc.*, Civ. No. 20-1646, 2021 WL 3526178, at *4 (D. Del. Aug. 11, 2021) (noting that courts disagree as to whether a pleading alleging post-suit willfulness must allege additional facts, beyond post-suit knowledge and continuing infringement, but holding that "if a defendant is on notice of a patent and the allegations of the infringement as a result of [the] filing of a pleading, there is no reason it should not be answerable for willful infringement after that date if the patentee can prove the requisite level of culpable behavior during the post-suit period." (alteration in original)); *IOENGINE, LLC v. PayPal Holdings, Inc.*, Civ. No. 18-452, 2019 WL 330515, at *7 (D. Del. Jan. 25, 2019) (when stating a claim for post-suit willfulness, "there is no requirement that the plaintiff plead additional facts, beyond knowledge of the patent or patents, in order for a claim of willful infringement to survive a motion to dismiss"); *NexStep, Inc. v. Comcast Cable Commc'ns, LLC*, Civ. No. 19-1031, 2019 WL 5626647, at *3 (D. Del. Oct. 31, 2019) (finding that the plaintiff stated a claim for post-suit willful infringement because the "complaint notifies [the defendant] of the patents that it is accused of infringing and includes factual allegations of [the defendants] continued infringing activities");

*Blitzsafe Texas, LLC v. Volkswagen Grp. of Am., Inc.*, Civ. No. 15-1274, 2016 WL 4778699, at *7 (E.D. Tex. Aug. 19, 2016) (finding that the plaintiff stated a claim for post-suit willful infringement because the Complaint notified the defendant of the patents that they were accused of infringing and the defendants "have not ceased their infringing activities."). Similarly here, based on the allegations in the Amended Complaint, the Court can plausibly infer that Plaintiff notified Defendant of the patent Defendant is accused of infringing, and asserts factual allegations that Defendant has not since ceased its activities, i.e. selling the G-Force 4 Piece Travel Neck Pillows. Therefore, the Court finds that the Amended Complaint adequately asserts a claim for post-suit willful infringement as of the time Defendant was served with the initial Complaint.

Accordingly, the Court will **GRANT** the Motion as to Plaintiff's claim for pre-suit willful infringement and dismiss that claim without prejudice. Plaintiff may, however, seek leave to amend its pleading as to this claim before the Magistrate Judge if appropriate at a later time. The Court will **DENY** the Motion as to Plaintiff's claim for post-suit willful infringement.

### B. TRADE DRESS INFRINGEMENT (COUNT TWO)

The Court turns next to Count Two, which alleges trade dress infringement. As stated in the Court's prior decision, trade dress "is the overall look of a product of business" and includes "not only a product's packaging but also its design, such as its size, shape, . . . color," and texture. *Ezaki Glico Kabushiki Kaisha v. Lotte Int'l Am. Corp.*, 986 F.3d 250, 255–56 (3d Cir. 2021) (quoting *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 308 (3d Cir. 2014) and *Wal-Mart Stores, Inc. v. Samara Bros.*, 529 U.S. 205, 209 (2000)). The Third Circuit has noted that "before [the Court] reaches the question of protectability . . . a district court should scrutinize a plaintiff's description of its trade dress to ensure itself that the plaintiff seeks protection of visual elements of its business." *Fair Wind*, 764 F3d at 309. This includes a "duty to articulat[e] the specific

elements which comprise its distinct dress." *Id.* To meet this duty, "[t]he discrete elements which make up the [trade dress claim] should be separated out and identified in a list." *Id.* (quoting 1 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 8:3 (4th ed. 2014)). Merely including images of products is insufficient. *See Tristar Prods., Inc. v. E. Mishan & Sons, Inc.*, Civ. No. 17-1204, 2017 WL 1404315, at *7 (D.N.J. Apr. 19, 2017); *see also Liko AB v. Rise Lifts, Inc.*, Civ. No. 07-5302, 2008 WL 2977869, at *6 (E.D. Pa. July 31, 2008) ("The mere attachment of photographs is not sufficient to provide notice of what elements are alleged to constitute the trade dress at issue.").

To state a claim for trade dress infringement, a plaintiff must plausibly plead that (1) the allegedly infringing design is non-functional; (2) the design is inherently distinctive or has acquired secondary meaning; and (3) consumers are likely to confuse the source of the plaintiff's product with that of the defendant's product. *See Fair Wind*, 764 F.3d at 309.

In its previous decision, the Court found that "[d]espite Plaintiff's claim of non-functionality, the Complaint and supporting documents indicate that the very features Plaintiff contends are non-functional are not only useful, but also give the EVOLUTION Pillow an advantage over its competitors—they do more than just brand the product." (ECF No. 20 at 17.) The Court also found that "[n]early every one of the features Plaintiff attempts to characterize as non-functional—including the pillow's shape, clasp, and soft cover—are described as serving a particular function on Plaintiff's website." (*Id.* at 18.)

In its Amended Complaint, Plaintiff alleges that the distinctive shape of its product is that it comprises an outer silhouette, a base area, an intermediate outer sidewall, and an upper area, which "provides for a distinctive and non-functional appearance." (Am. Compl. ¶¶ 30–37.) In the Motion, Defendant argues that Plaintiff has failed to plausibly allege each required element to

make out a claim for trade dress infringement. Plaintiff argues in rebuttal that the distinct features create a particular overall appearance across its products that "is unlike competing travel pillows." (Opp'n Br. at 20.) Specifically, "it is the appearance of the overall outer silhouette that creates the look of" Plaintiff's trade dress. (*Id.* at 23.)

The Court will address each element of a trade dress infringement claim in turn. *See Fair Wind*, 764 F.3d at 309.

        1.      <u>Non-functionality</u>

Step one of a trade dress infringement claim involves functionality. It is black letter law that in order to prevent trade dress protection from "usurping the place of patents" and "keep trademark law in its lane," trade dress cannot protect the functionality of a product. *Ezaki*, 986 F.3d at 256; *accord* Lanham Act, 15 U.S.C. § 1052(e)(5) (providing that registration shall be refused if it "comprises any matter that, as a whole, is functional"). "Trade dress is limited to designs that identify a product's source. It does not safeguard designs that are functional—that is, useful." *Ezaki*, 986 F.3d at 253. "[A] product's design, including its shape, is often useful and thus functional." *Id*. at 258; *see also PIM Brands Inc. v. Haribo of America Inc.*, 81 F.4th 317, 321 (3d Cir. 2023) (holding that "trade dress" is only meant to "protect[] distinctive choices" that are "arbitrary, ornamental, or the like"). A feature is functional if it is "essential to the use or purpose of the [product]" or "it affects the cost or quality of the [product]." *TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 33 (2001) (citations omitted).

Notably, "[t]rade dress is limited to design choices that serve only to brand a product." *PIM Brands*, 81 F.4th at 321. "If a design choice 'would put competitors at a significant non-reputation-related disadvantage,'" or "makes a product work better" or "improves cost, quality, or the like" then it is functional and thus not protected as trade dress. *Id.* (internal citations omitted) (quoting *Qualitex Co. v. Jacobson Prods. Co.*, 514 U.S. 159, 165 (1995)). "Because the

11

functionality bar is low," in order to be functional "all the design need[s] [to] do is give the product a significant competitive edge beyond identifying its source." *Id.* at 322.

Defendant argues that Plaintiff has not—and cannot—plead that the unregistered trade dress it has identified is non-functional. (Moving Br. at 21.) Plaintiff contends that its allegations in Paragraphs 32, 34, 36, 39, 40, 41, 42, and 43 adequately plead non-functionality. (Opp'n Br., at 22–23.) Defendant responds that simply because the trade dress achieves a desired aesthetic effect or yields no advantage is insufficient to plausibly state a claim for trade dress infringement. (Moving Br. at 21.) Defendant adds that "each of the features [Plaintiff] characterizes as non-functional are the same elements [it] touts as having a particular function on its website." (*Id.* at 22.)

Reading the Amended Complaint as a whole, the Court finds that Plaintiff has adequately alleged non-functionality. First, the allegations summarize the distinctive shape and features of the product (Am. Compl. ¶¶ 29–36), and state that the pillows "could have another shape or appearance and still function." (*See, e.g.*, *id.* ¶¶ 32 ("The base area could have another shape or appearance and still function as the bottom of a travel pillow."), 34, 36 ("the upper area could have another shape or appearance and still function as the top of a travel pillow.").) These allegations directly address the fact that Plaintiff's trade dress, at least at the pleading stage, was likely utilized for non-functional purposes.

The Amended Complaint also alleges that consumer's eyes are drawn to particular areas of the pillow as a result of Plaintiff's trade dress. (*Id.* ¶ 34.) Plaintiff further alleges that the pillow's trade dress makes the product significantly different than other pillows on the market. (*See, e.g.*, ¶¶ 38, 39, 43.) Notably, Plaintiff alleges that "competitors in the neck pillow field are readily able to offer products that function as neck pillows without having to look like the

12

EVOLUTION® Trade Dress." (*Id.* ¶ 41; *see also id.* ¶ 42.)  These allegations, when taken as true as the Court must, plausibly allege that the pillow's trade dress is unrelated to consumer demand and utilized by Plaintiff so that consumers can identify the source of the product.  *EBIN New York, Inc. v. Kiss Nail Prods., Inc.*, Civ. No. 23-2369, 2024 WL 1328029, at *6 (D.N.J. Mar. 28, 2024).

As to cost, Plaintiff has alleged that its trade dress, specifically, the silhouette, shape, outer sidewalls, base, upper area, and the drawstring and clasp, is distinct and selective and does not impact the cost of the product.  (*See* Am. Compl. ¶¶ 28–47.)  Specifically, Plaintiff alleges that "[t]he appearance of the EVOLUTION Trade Dress does not affect the cost or quality of the EVOLUTION Pillow."  (*Id.* ¶ 42.)  These allegations pertaining to cost support the adequacy of the allegations that Plaintiff's trade dress is non-functional.

In short, this is not a case where Plaintiff merely alleges conclusory allegations or makes "threadbare recitations of the applicable legal standard."  *See Wonderful Co. LLC v. Nut Cravings Inc.*, Civ. No. 21-3960, 2023 WL 6279197, at *7 (S.D.N.Y. Sept. 26, 2023).  Accordingly, the Court finds that Plaintiff has plausibly alleged that its trade dress is non-functional.

### 2. Inherently Distinctive or Secondary Meaning

Plaintiff must next plausibly allege that the trade dress is inherently distinctive or has acquired secondary meaning "in the minds of the general public."  *Novartis AG v. Novadoz Pharms. LLC*, Civ. No. 25-849, 2025 WL 830368, at *5 (D.N.J. Mar. 17, 2025).  A product's trade dress "is inherently distinctive if '[its] intrinsic nature serves to identify a particular source.'"  *Wal-Mart Stores*, 529 U.S. at 210 (alteration in original) (quoting *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992)).  "Design, like color, is not inherently distinctive."  *Id.* at 212.  Trade dress can also be distinctive "if it has developed secondary meaning, which occurs when, 'in the minds of the public, the primary significance of a [product feature] is to identify the source of the

13

product rather than the product itself.'" *Id.* at 211 (alteration in original) (quoting *Inwood Labs., Inc. v. Ives Labs., Inc.,* 456 U.S. 844, 851 n.11 (1982)).[8]

Secondary meaning exists "where a plaintiff demonstrates consumer recognition" of the product. *See Shirley May Int'l US Inc. v. Marina Grp. LLC*, Civ. No. 21-19951, 2022 WL 17622066, at *6 (D.N.J. Dec. 13, 2022). Secondary meaning can be created through "extensive advertising which creates in the minds of consumers an association between the [product] and the provider of the services advertised." *Commerce Nat'l Ins. Servs., Inc. v. Commerce Ins. Agency, Inc.*, 214 F.3d 432, 438 (3d Cir. 2000). The Third Circuit has enumerated the following non-exhaustive list of factors for courts to consider in determining secondary meaning:

> (1) the extent of sales and advertising leading to buyer association; (2) length of use; (3) exclusivity of use; (4) the fact of copying; (5) customer surveys; (6) customer testimony; (7) the use of the [trade dress] in trade journals; (8) the size of the company; (9) the number of sales; (10) the number of customers; and (11) actual confusion.

*Id.* (internal citation omitted). Importantly, "[a]t the motion to dismiss stage, th[e] Court need not conclusively determine that the [product] [has] acquired secondary meaning[,]" or find facts pertaining to every factor. *Lorillard Tech., Inc. v. NJ Ale House, LLC*, Civ. No. 14-2044, 2015 WL 1197531, at *7 (D.N.J. Mar. 13, 2015).

Defendant argues that Plaintiff has not adequately pled that its product acquired secondary meaning because its allegations are conclusory. (Moving Br. at 23–24.) Defendant further contends that alleging that Plaintiff advertises and spends significant amounts of money on the product is insufficient. (*Id.* at 24.)

---

[8] Plaintiff does not allege or argue that its trade dress is inherently distinctive. "In an action for infringement of unregistered trade dress . . . , a product's design is distinctive, and therefore protectible, only upon a showing of secondary meaning." *Wal-Mart Stores*, 529 U.S. at 216. Accordingly, the Court's inquiry is solely on whether the trade dress has acquired secondary meaning.

14

The Amended Complaint asserts that Plaintiff's trade dress has "a distinctive appearance that is immediately recognizable due to the years of sales, advertising and promotion of the EVOLUTION Trade Dress, resulting in strong secondary meaning." (Am. Compl. ¶ 29.) The Amended Complaint contains several allegations that Plaintiff has spent significant sums of money to market and advertise the EVOLUTION pillow. (*Id.* ¶¶ 9, 24, 37, 42, 47, 64, 73 ("Cabeau has spent millions of dollars on extensive advertisement and marketing of its EVOLUTION Pillow embodying the EVOLUTION Trade Dress resulting in consumer association with the source of the products.").) *See Commerce Nat'l Ins. Servs.*, 214 F.3d at 438 ("In general, [secondary meaning] is established through extensive advertising which creates in the minds of consumers an association between the [product] and the provider of the services advertised.").

The Amended Complaint also contains allegations pertaining to Plaintiff's length of use and its exclusivity of use. (*See, e.g.*, *id.* ¶¶ 28, 29, 43.) Notably, Plaintiff alleges that "[c]onsumers have repeatedly shown they are willing to pay much more for the EVOLUTION® Pillow despite the presence of competing products readily available in the marketplace, and they rely on the distinctive EVOLUTION® Trade Dress to identify the product offered by Cabeau." (*Id.* ¶ 47.)

Further, Plaintiff alleges that Defendant's neck pillow has an "identically shaped base area, identically shaped intermediate sidewalls, and identically shaped upper area. [Defendant] has even provided a drawstring and clasp positioned exactly as provided for by the EVOLUTION® Pillow, again demonstrating its familiarity with the EVOLUTION® Trade Dress and its intent to copy," (*id.* ¶ 49), satisfying the "copying" factor set forth by the Third Circuit. *See Commerce Nat'l Ins. Servs.*, 214 F.3d at 438.

The Court is therefore satisfied that based on these allegations, the Amended Complaint plausibly alleges that the EVOLUTION pillow has acquired secondary meaning. *See I.M. Wilson,*

15

*Inc. v. Otvetstvennostyou Grichko*, 500 F. Supp. 3d 380, 410 (E.D. Pa. 2020) ("[T]he Court finds that Grichko plausibly alleged secondary meaning by alleging length of use, exclusivity of use, the size of the company, the alleged fact of copying, and the number of sales.").

### 3. Likelihood of Confusion

Lastly, Plaintiff must allege that there is a likelihood of confusion between the products at issue. "A likelihood of confusion exists when consumers viewing the defendant's trade dress probably would assume that the product it represents is associated with the source of a different product identified by the plaintiff's similar trade dress." *Buzz Bee Toys, Inc. v. Swimways Corp.*, 20 F. Supp. 3d 483, 505 (D.N.J. 2014) (quoting *McNeil Nutritionals, LLC v. Heartland Sweeteners, LLC*, 511 F.3d 350, 356–57 (3d Cir. 2007)). The Third Circuit has articulated ten "*Lapp* factors" to evaluate whether there is a likelihood of confusion. *Buzz Bee*, 20 F. Supp. 3d at 505–06.[9] In the context of trade dress infringement, those factors are:

> (1) the degree of similarity between the plaintiff's trade dress and the allegedly infringing trade dress; (2) the strength of the plaintiff's trade dress; (3) the price of the goods and other factors indicative of the care and attention expected of consumers when making a purchase; (4) the length of time the defendant has used its trade dress without evidence of actual confusion arising; (5) the intent of the defendant in adopting its trade dress; (6) the evidence of actual confusion; (7) whether the goods, though not competing, are marketed through the same channels of trade and advertised through the same media; (8) the extent to which the targets of the parties' sales efforts are the same; (9) the relationship of the goods in the minds of consumers because of the similarity of function; (10) other facts suggesting that the consuming public might expect the plaintiff to manufacture a product in the defendant's market, or that the plaintiff is likely to expand into that market.

---

[9] *Lapp* was a trademark infringement case but the factors articulated therein have been extended to the trade dress infringement context. *See McNeil*, 511 F.3d at 358; *Buzz Bee*, 20 F. Supp. 3d at 505–06; *Novartis AG*, 2025 WL 830368, at *5.

*McNeil*, 511 F.3d at 358 (citing *Interpace Corp. v. Lapp, Inc.*, 721 F.2d 460 (3d Cir. 1983)). Where, as here, the "products are directly competing, and the [trade dress] are clearly very similar, a district judge [may] consider only" the product's similarity and need not consider the remaining factors. *A&H Sportswear v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 214 (3d Cir. 2000).

Notably, a plaintiff need not prove likelihood of confusion at the motion to dismiss; a plaintiff merely must allege that there is a chance of confusion. *See Cambridge Pavers, Inc. v. EP Henry Corp.*, 407 F. Supp. 3d 503, 509 (D.N.J. 2019) ("[T]he plaintiff is not required to prove the likelihood of confusion at the pleading stage."); *Interlink Prods. Int., Inc. v. F & W Trading LLC*, Civ. No. 15-1340, 2016 WL 1260713, at *10 (D.N.J. Mar. 31, 2016); *Lorillard Tech., Inc*, 2015 WL 1197531, at *9 ("Whether, in fact, there is a likelihood of confusion . . . is a fact-laden inquiry that is more appropriately undertaken at the summary judgment stage.").

Here, reading the Amended Complaint in its entirety, the Court is satisfied that Plaintiff has plausibly alleged a likelihood of confusion. First, Plaintiff has identified, via pictures, that the two products are similar in both packaging and design. (*See* Am. Compl. ¶ 51.) Additionally, Plaintiff alleges that "[Defendant's] marketing, distribution and sales of its G-Force 4 Piece Travel Neck Pillow mimicking the EVOLUTION® Trade Dress is likely to confuse and deceive customers as to the source, affiliation, association, quality and nature of Kennedy's products because consumers associate the EVOLUTION® Trade Dress with the Cabeau and the goodwill established in its products." (*Id.* ¶ 75.) It is telling that the parties compete in the same market, which increases the likelihood of confusion. (*Id.* ¶ 64 ("Cabeau and Kennedy compete in the same market for travel pillows.").) Plaintiff further alleges that Defendant's commercial use of a similar design is "likely to cause confusion." (*Id.* ¶ 53.) Specifically, Plaintiff alleges that the

> copying of the Trade Dress is particularly problematic because the [Defendant's] G-Force 4 Piece Travel Neck Pillow will be used in

17

> public—on the bus or airplanes—where third parties, who were not present when the product was purchased, will associate the inferior quality of the [Defendant's] G-Force 4 Piece Travel Neck Pillow with Cabeau because it has the unmistakable look and impression that is evoked by the EVOLUTION® Trade Dress.

(*Id.*) Based on these allegations, the Court finds that Plaintiff has adequately pled that Defendant's product is likely to confuse and deceive consumers.

In sum, the Court finds that Plaintiff has plausibly alleged a claim for trade dress infringement. Consequently, the Court will **DENY** the Motion as to Count Two.

### C. UNFAIR COMPETITION (COUNT THREE)

Count Three asserts a claim for common law unfair competition. (Am. Compl. ¶¶ 48–54, 82–86.) In the Motion, Defendant argues in a footnote that "[b]ecause [Plaintiff's] federal trade dress infringement claim fails, its common law claims for unfair competition necessarily fail as well." (Moving Br. at 21 n.6.) Plaintiff does not address Count Three in its Moving Brief, likely because "the elements for a claim [of] trademark infringement under the Lanham Act are the same as the elements for . . . claims of trademark infringement and unfair competition under New Jersey statutory and common law." *J&J Snack Foods Corp. v. Earthgrains Co.*, 220 F. Supp. 2d 358, 374 (D.N.J. 2002); *see also Buying For The Home, LLC v. Humble Abode, LLC*, 459 F. Supp. 2d 310, 317 (D.N.J. 2006) (same).

For the same reasons the Court will deny Defendant's Motion to dismiss Count Two, it will also **DENY** the Motion to dismiss Count Three.

### D. EXPIRED PATENT

Defendant separately contends that the D'402 Patent is expired; Defendant has ceased sales of its product; and Defendant's sales were minimal. Thus, Defendant argues that "the amount in controversy in this matter is simply insufficient to justify any further litigation by both parties."

(Moving Br. at 31–32.) These *de minimis* suit arguments are no doubt relevant to the parties' wish to continue litigating this matter, but they are not a basis for dismissal. Accordingly, the Court will not entertain them at this stage.

## V. CONCLUSION

For the reasons stated above, the Court will **GRANT-IN-PART** and **DENY-IN-PART** the Motion. The Motion will be **GRANTED** insofar as the portion of Count One alleging pre-suit willful infringement is **DISMISSED WITHOUT PREJUDICE.** The Motion will otherwise be **DENIED**. Plaintiff will not be given leave to further amend the complaint at this juncture. An appropriate Order will follow.

Date: May 27, 2025

s/ Zahid N. Quraishi  
**ZAHID N. QURAISHI**  
**UNITED STATES DISTRICT JUDGE**
