UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| AZUROUS, INC., d/b/a CABEAU,<br><br>Plaintiff,<br><br>v.<br><br>KENNEDY INTERNATIONAL, INC.,<br><br>Defendant. | Civ. No. 23-4770 (ZNQ)(JBD)<br><br>**MEMORANDUM ORDER**<br>(Filed Under Temporary Seal) |

Before the Court is a request by plaintiff Azurous, Inc. ("Azurous") to take additional discovery from defendant Kennedy International, Inc. ("Kennedy"). [Dkt. 56.] Kennedy opposes the request. [Dkt. 59.] For the reasons set forth below, the Court GRANTS Azurous's request in part and DENIES it in part.[1]

*

The Court writes for the parties and accordingly assumes familiarity with the case. Azurous filed this action against Kennedy in August 2023 alleging patent infringement, trade dress infringement, and unfair competition. [Dkt. 1.] The Court has issued two opinions granting in part and denying in part Kennedy's motions to dismiss the operative complaints against it. [Dkts. 20, 21, 35, 36.] On June 24, 2025 (after the Court's second opinion), and in lieu of filing an answer to Azurous's amended complaint, Kennedy filed a request for entry of its voluntary default pursuant to Federal Rule of Civil Procedure 55(a). [Dkt. 39.] Kennedy explained

---

[1] In view of the Court's Order today granting the parties' motion to seal portions of the submissions presently before the Court [Dkt. 62], the Court has filed this Order under temporary seal pending proposed redactions by the parties.

that, in light of the Court's dismissal of Azurous's claims for pre-suit willfulness (as to patent infringement), the expiration of Azurous's asserted design patent, the parties' unsuccessful settlement efforts, and Kennedy's limited sales of the accused product and limited profits from those sales, it sought the entry of default "to minimize any further burden on the parties or th[e] Court" because "the amounts in controversy are insufficient to justify any further expense into the liability issues in this case." *Id.* at 4-5.  Azurous did not oppose the voluntary entry of default against Kennedy, but requested "discovery and a hearing, as necessary, to conduct an accounting, determine the amount of damages, further investigate the facts surrounding [Kennedy]'s willful infringement, and determine the scope of a permanent injunction to be entered." [Dkt. 41] at 1, 3.

The Court held a telephone status conference on July 9, 2025 to address Kennedy's request for entry of default, during which the Court directed the parties to "meet and confer regarding the nature and scope" of potential default proceedings. [Dkt. 42.]  On July 21, 2025, the parties filed a joint status letter indicating that they were unable to agree on a proposal for proceedings following the entry of default against Kennedy.  [Dkt. 43.]  Kennedy proposed that "the Court limit any default discovery to that which Kennedy [ ] already voluntarily agreed to produce—namely, a signed declaration about the sourcing, sales, and profits of th[e] accused products" with "authenticate[d] documents sufficient to identify th[e] accused products' purchase, sales, revenues, profits, and remaining inventory in advance of any subsequent default judgment briefing." *Id.* at 2 (cleaned up).  Azurous, on the other

hand, argued that while it was amenable to reviewing Kennedy's proffered declaration and attached documents "as an initial step," it was entitled to "at least some written discovery (interrogatories, document requests, and requests for admissions) and at least one deposition . . . for a meaningful hearing under Fed. R. Civ. P. 55 to enter or effectuate judgment." *Id.* at 1-2.

On July 23, 2025, the Court held another telephone status conference to address the proper scope of default-related discovery. *See* [Dkt. 45]. After a discussion with counsel, the Court ordered Kennedy to provide its contemplated declaration and accompanying documents to Azurous, and authorized Azurous to seek "limited, targeted supplemental discovery in aid of the Court's future determination of damages" following Kennedy's production of the declaration and documents. *Id.* The Court also directed the parties to meet and confer regarding "their positions on the extent of the supplemental discovery required in light of [Kennedy]'s production of the declaration and supporting documents." *Id.*

On August 29, 2025, the parties filed a joint status letter reporting that while Kennedy had produced the declaration and supporting documents, they were unable to reach agreement regarding whether and to what extent further discovery is appropriate. [Dkt. 54.] The present dispute followed.

Azurous argues that Kennedy's declaration provided "only limited, hand-picked, self-serving information" and that Azurous should be permitted to request additional discovery regarding the "remedies [it] believes it is entitled to upon entry of the default." [Dkt. 56] at 2. Specifically, Azurous seeks to serve fifteen

3

document requests and twelve interrogatories in order "to ascertain[] the proper remedy in this case" consistent with "controlling law, factors [c]ourts consider, [ ] inquiries related to patent infringement, Lanham Act violations, and unfair competition," and to take a single deposition regarding the same. *Id.* at 2-5; [Dkts. 56-3, 56-4]. If this further discovery is not permitted, Azurous submits that "all inferences should be drawn in [Azurous]'s favor, and [Kennedy]'s selective, self-serving statements should be ignored." [Dkt. 56] at 5.

In response, Kennedy argues that no further discovery is appropriate, as the Federal Rules of Civil Procedure do not permit the post-default, pre-default-judgment discovery that Azurous seeks, and in any event, the declaration and associated documents that Kennedy already produced provides relevant and sufficient information to aid the Court's determination of damages on default judgment. [Dkt. 59] at 1-3. Kennedy further argues that Azurous's "proposed discovery topics themselves extend beyond the type of minimal information on damages that could ever be appropriate for default discovery," because the requests "are not targeted [ ] to simply gain relevant information, but are the type of general discovery obligations that would force Kennedy" to undertake the costs and burdens associated with plenary discovery that it sought to avoid by requesting entry of its voluntary default in the first place. *Id.* at 3-5.

\*

Federal Rules of Civil Procedure 16 and 26 frame the discovery process in federal civil litigation. Rule 26(f)(1) provides that "[e]xcept in a proceeding exempted

4

from initial disclosure under Rule 26(a)(1)(B) or when the court orders otherwise, the parties must meet and confer as soon as practicable" to create a plan for discovery. Fed. R. Civ. P. 26(f)(1). Generally, parties "may not seek discovery from any source before the parties have conferred as required by Rule 26(f)," unless "authorized by the[] [federal] rules, by stipulation, or by court order." Fed. R. Civ. P. 26(d)(1). Accordingly, "[t]he Court has the discretion [ ] to grant leave to conduct discovery prior to the Rule 26(f) conference under Rule 26(d)(1)." *Times Three Clothier, LLC v. Rack's OffPrice*, Civ. No. 22-3013 (MAH), 2022 WL 3053946, at *2 (D.N.J. Aug. 3, 2022). To determine whether expedited or early discovery should be permitted under Rule 26(d), courts in this District typically apply the good cause standard. *Id.*[2] And once discovery is authorized, "the federal rules allow broad and liberal discovery," *Pacitti v. Macy's*, 193 F.3d 766, 777-78 (3d Cir. 1999) (citations omitted), but they also expressly allow the Court to use its discretion and limit or deny discovery requests if the discovery sought is, among other things, "unreasonably cumulative or duplicative" or not "proportional to the needs of the case," considering "the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the

---

[2] "Good cause exists where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party." *Modern Woman, LLC v. Does I-X*, Civ. No. 12-4859 (JAD), 2013 WL 707908, at *2 (D.N.J. Feb. 26, 2013) (quotations omitted). In conducting the good cause analysis, courts typically examine the following non-exhaustive factors: "(1) the timing of the request in light of the formal start to discovery; (2) whether the request is narrowly tailored; (3) the purpose of the requested discovery; (4) whether the discovery burdens the defendant; and (5) whether the defendant can respond to the request in an expedited manner." *Strike 3 Holdings, LLC v. Doe*, Civ. No. 18-12585 (NLH), 2020 WL 3567282, at *4 (D.N.J. June 30, 2020) (citation omitted).

discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1) and 26(b)(2)(C)(i), (iii). The Court exercises broad discretion to manage discovery issues. *See Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936); *In re Fine Paper Antitrust Litig.*, 685 F.2d 810, 817 (3d Cir. 1982) ("matters of docket control and conduct of discovery are committed to the sound discretion of the district court." (citations omitted)); *Coyle v. Hornell Brewing Co.*, No. 08-2797 (JBS), 2009 WL 1652399, at *3 (D.N.J. June 9, 2009) ("In discovery disputes, the Magistrate Judge exercises broad discretion and is entitled to great deference." (citations omitted)).

Federal Rule of Civil Procedure 55(a) provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). After default is entered pursuant to Rule 55(a), the non-defaulting party may seek entry of default judgment under either Rule 55(b)(1) or Rule 55(b)(2). Fed. R. Civ. P. 55(b); *Nationwide Mut. Ins. Co. v. Starlight Ballroom Dance Club, Inc.*, 175 F. App'x 519, 521 n.1 (3d Cir. 2006) (not precedential). When deciding a motion for default judgment, the Court accepts as true all of the well-pleaded allegations in a plaintiff's complaint. *Sabinsa Corp. v. Aegle Bios, Inc.*, Civ. No. 16-3322 (FLW), 2016 WL 6595915, at *1 (D.N.J. Nov. 7, 2016) (citing *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990)). But the Court still must make "an independent inquiry into whether the unchallenged facts constitute a legitimate cause of action" and "must make an

<mark>⬥</mark>
<mark/>

<mark/>

<mark/>

<mark/>

<mark/>
<mark/>

<mark/>

<mark/>

<mark/>

<mark/>
<mark/>

<mark/>

<mark/>

<mark/>

<mark/>
<mark/>

<mark/>

<mark/>

<mark/>

<mark/>
<mark/>

<mark/>

independent determination" regarding questions of law. *Days Inn Worldwide, Inc. v. Mayu & Roshan, LLC*, Civ. No. 06-1581 (PGS), 2007 WL 1674485, at *4 (D.N.J. June 8, 2007) (citations omitted). Courts also do not accept as true allegations pertaining to the amount of damages, and "may employ various methods to ascertain the amount of damages due, including calculation based on figures contained in documentary evidence or affidavits." *Educ. Credit Mgmt. Corp. v. Aquatec Water Treatment, Inc.*, Civ. No. 10-06752 (WHW), 2011 WL 2746130, at *1 (D.N.J. July 12, 2011) (citing *Ramada Worldwide Inc. v. Benton Harbor Hari Ohm, L.L.C.*, Civ. No. 05-3452 (JAG), 2008 WL 2967067, at *5 (D.N.J. July 31, 2008); *Days Inn*, 2007 WL 1674485, at *5-6)).

*

The Court has carefully considered the parties' submissions, Azurous's proposed discovery requests, Kennedy's declaration and associated document production, and applicable law. For the reasons set forth below, the Court believes that some additional limited discovery in aid of Azurous's forthcoming motion for default judgment is in order. The Court will, accordingly, grant in part Azurous's request for supplemental discovery. But the discovery requests themselves are excessive, so the Court will permit only a limited portion of the discovery that Azurous seeks.

As the Court has described above, the present dispute arises in an unusual procedural posture. Thus far, Kennedy has litigated this case with the benefit of experienced and able counsel; it has not "failed to plead or otherwise defend"

the case—at least not yet. Fed. R. Civ. P. 55(a). Seeking to avoid what it considers to be excessive litigation costs relative to what it considers to be the likely amount of a judgment, Kennedy voluntarily seeks the entry of default against itself, anticipating a default judgment thereafter. It does so before the filing of a responsive pleading, before the parties have held a Rule 26(f) conference, and before the Court has issued a scheduling order authorizing plenary discovery. And it does so even though "[t]he eventual entry of a default judgment is disfavored, and decisions on the merits are to be encouraged." *Dennis v. Mylife.com, Inc.*, Civ. No. 20-954 (ESK), 2020 WL 5350267, at *1 (D.N.J. Sept. 3, 2020) (citing *Farnese v. Bagnasco*, 687 F.2d 761, 764 (3d Cir. 1982)). In that context, and consistent with its objectives, Kennedy seeks to limit the extent of default-related discovery in aid of the Court's assessment of damages on a motion for default judgment. *See* [Dkt. 59]. Azurous, on the other hand, seeks more fulsome discovery to ensure that it and the Court have sufficient information to make that determination. *See* [Dkt. 56].

    Azurous and the Court have entertained Kennedy's strategic decision to resolve this action economically through default judgment proceedings. Yet Kennedy's strategy—and its position on discovery—risks prejudicing Azurous by limiting its ability to seek a full measure of default-judgment relief. Indeed, in some respects, Kennedy appears to be using its voluntary default strategy as both a sword and shield—minimizing the costs and burdens of discovery while simultaneously handicapping the non-defaulting party's ability to support its damages application with evidence. While it is true, as Kennedy contends, that the Federal Rules of Civil

Procedure do not expressly authorize post-default, pre-default-judgment discovery, neither do they prohibit discovery in this posture.  Moreover, the Court notes, default has not yet been entered in the first instance.  While the Court is willing to go along with Kennedy's proposal, it must ensure a fair process to Azurous and a fair amount of information that allows it to seek whatever damages it believes is legally supportable.

In these atypical circumstances, the Court concludes that it may authorize discovery in this procedural posture pursuant to Rule 26(d)(1), that there is good cause to do so, and that the Court may regulate that discovery pursuant to Rule 26(b).[3]  Having made that determination, the Court also exercises its discretion to permit Azurous to conduct some additional damages-related discovery, beyond Kennedy's declaration and the documents produced thus far, in aid of the Court's future determination of damages as part of default-judgment proceedings.  The Court finds it appropriate to do so given the minimal discovery that has taken

---

[3]     Kennedy spends several paragraphs distinguishing Azurous's proffered cases in support of discovery requests, *see* [Dkt. 59] at 2-4, but it bears emphasis that the main case on which Azurous relies in support of its position that further default discovery is improper—*Ixotic AG v. Kammer*, Civ. No. 09-4345, 2010 WL 2734408 (E.D.N.Y. July 8, 2010)—itself contemplates that such discovery may be appropriate where, as here, a defendant has appeared and there is good cause to forego a discovery planning conference.  *Cf. id.* at *1 ("although the rules of procedure explicitly provide for post-judgment discovery . . . they make no such provision for seeking discovery from a defaulting party prior to judgment;" rather, "all of the mechanisms relating to pre-judgment discovery . . . appear to contemplate that a named party's discovery obligations arise only after the party has appeared and engaged in a discovery planning conference." (citing Fed. R. Civ. P. 26(a)(1)(C), (d)(1)).  The Court is well within its discretion to order discovery at this juncture.  *See* Fed. R. Civ. P. 26(d)(1) ("A party may not seek discovery from any source before the parties have conferred as required by Rule 26(f), except . . . when authorized . . . by court order").

place thus far and to ensure a fair process for the non-defaulting party, which is otherwise prepared to engage in plenary discovery and litigate the case on the merits.

That said, the Court has scrutinized Azurous's numerous requests for supplemental discovery and concludes that they far exceed what is reasonable and proportional to the needs of the case in the present posture. Those requests certainly stray well beyond what the Court had in mind when it permitted "limited, targeted supplemental discovery in aid of the Court's future determination of damages." [Dkt. 45.] Many of Azurous's requests for discovery are duplicative of each of other, and/or seek information that is cumulative of what Kennedy already provided in its declaration and supporting documents. *See, e.g.,* [Dkt. 56-3] (Request for Production Nos. 12 (seeking "[d]ocuments relating to or showing [Kennedy]'s inventory of [it]s Neck Pillows, including the location of such inventory after the date the original Complaint was filed in this Action") and 13 (seeking "[d]ocuments relating to any attempt by [Kennedy] to withdraw [its] Neck Pillows from the market after the date the original Complaint was filed in this Action")); [Dkt. 56-4] (Interrogatory No. 8 (requesting that Kennedy "[i]dentify and describe all facts and circumstances relating to all distribution, sales, or offers to sell [its] Neck Pillows, or ceasing to distribute, sell, or offer to sell, [its] Neck Pillows after [it]s receipt of the original Complaint")); [Dkt. 54] at Ex. A ¶¶ 19-20 (detailing Kennedy's action following receipt of the Complaint).

Other requests are not targeted or proportional to the needs of the case in light of the procedural posture and Kennedy's anticipated admission of all operative allegations in the amended complaint as part of the entry of default. *See, e.g.,* [Dkt. 56-3] (Request for Production No. 14 (seeking "[d]ocuments sufficient to identify the design of each pillow identified in Exhibit A . . . to the Guindi Declaration")); [Dkt. 56-4] (Interrogatory No. 12 (asking Kennedy to "[i]dentify and describe all facts and circumstances relating to [its] decision to request a default in the Action, excluding any information or documents covered by the attorney client or work product privilege")). Indeed, the Court gives significant weight to this point: "[W]hen a defendant is in default, the Court treats all pleadings and allegations of the plaintiff as true." *Sabinsa*, 2016 WL 6595915, at \*1 (citing *Comdyne I*, 908 F.2d at 1149). Many of Azurous's requests go well beyond damages-related discovery and tread too far into merits issues that Kennedy will have admitted as part of the entry of default.

On the whole, the Court concludes that Azurous's supplemental discovery requests are excessive and not proportional to the needs of the case. Consequently, the Court will permit only limited additional discovery. *See, e.g., Times Three Clothier*, 2022 WL 3053946, at \*2-4 (permitting plaintiff to proceed with expedited discovery to ascertain the extent of damages in anticipation of a motion for default judgment after the Clerk entered default against defendant, where plaintiff's requests sought "no more [discovery] than required to establish Plaintiff's damages in moving for default judgment"); *United States v. Angell's Concrete Const., Inc.*,

11

Civ. No. 07-1144, 2008 WL 4559805, at *1 (M.D. Pa. Oct. 8, 2008) (permitting "discovery to determine the amount of wages owed by defendant" following entry of default for the "limited purpose" of allowing "plaintiff to identify with certainty the amount of the default judgment it s[ought]").  Having reviewed the supplemental discovery requests, the Court directs Kennedy to produce materials responsive to Azurous's Request for Production Nos. 5 and 6, and answer Azurous's Interrogatory Nos. 3, 4, 7, and 8.  Azurous's request for additional discovery is otherwise denied.[4]

The Court concludes that permitting this limited discovery, coupled with the discovery that Kennedy has already provided thus far, is appropriately targeted to the calculation of a default damages award, strikes an appropriate balance, and provides a fair process to both sides—it is consistent with Kennedy's objective of cost-effective default proceedings, yet ensures that Azurous has enough information to make an evidence-based application for default judgment, including any request for enhanced damages under applicable law.

*

For the reasons stated, Azurous's request for discovery is GRANTED in part and DENIED in part.  The limited discovery ordered herein shall be taken pursuant to the parameters set forth above.  The parties shall meet and confer and, no later than **December 1, 2025**, submit to chambers via email

---

[4]     Azurous argues that adverse inferences should be drawn against Kennedy if it does not provide certain discovery responsive to its requests.  [Dkt. 56] at 3-5.  To the extent that the Court has denied Azurous's discovery requests, Azurous is free to argue during the default judgment phase that inferences should be drawn in its favor and against Kennedy; its request for those inferences to be drawn now is denied as premature.

(jbd_orders@njd.uscourts.gov) proposed redactions to this Order, consistent with applicable law and this Court's recent Order [Dkt. 62].  On or before **December 19, 2025**, the parties shall file a joint letter apprising the Court of the status of the discovery authorized herein, and proposing an agreed-upon schedule for the entry of default and a default-judgment proceedings.

    **IT IS SO ORDERED** this 17th day of November, 2025.

_____
J. BRENDAN DAY
UNITED STATES MAGISTRATE JUDGE